IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Sunny Days Entertainment, LLC, | ) | C/A No. 6:18-cv-00015-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| TRAXXAS, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process.[1] ECF No. 14. Plaintiff filed a Response in Opposition, ECF No. 19, and Defendant filed a Reply, ECF No. 20. Therefore, the Motion is ripe for review.

I. **Procedural and Factual History**

Plaintiff is a South Carolina corporation with its principal place of business in Simpsonville, South Carolina. Plaintiff "makes and sells role play toys (for children to imitate real life occupations) as well as toy bows and arrows, toy guns, toy trucks, and toy vehicles." ECF No. 8 at 2. Plaintiff "began selling toys in commerce under the MAXX ACTION trademark at least as early as April 1, 2014, and on September 6, 2017, Plaintiff filed a trademark application with the USPTO to register MAXX ACTION for 'Role play toys in the nature of playsets for children to imitate real life occupation; Toys, namely, toy bows and arrows, toy guns, toy trucks, toy vehicles,' Application Serial No. 87598578."

---

[1] The parties agree that any problems with service of process have been remedied; therefore, the Court finds the Motion moot on that issue. Accordingly, the Court will limit its discussion to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. *See* ECF No. 20 at 1 n.1.

1

*Id.* at 3. Plaintiff's toys generally retail for approximately $4.99 to $19.99 and are sold through "mass market" outlets such as Target, Walmart, and other large stores. *Id.* at 5–6.

Defendant is a Texas limited partnership with its principal place of business in McKinney, Texas. "Defendant makes and sells radio-controlled model vehicles and related parts and motors." *Id.* at 2. Defendant's vehicles retail for approximately $149.99 to $949.99 and are sold online and through specialized hobby shops. *Id.* at 5–6. Defendant claims ownership to a variety of trademark registrations containing the phrase "MAXX" such as "E-MAXX," "MINI MAXX," and other related phrases. *Id.* The original "MAXX" trademark was issued on January 2, 2007, with other trademarks containing permutations of that phrase being issued since that time up to and including December 27, 2016. *Id.* at 2–3.

On December 4, 2017, Defendant sent Plaintiff a cease-and-desist letter, "in which Defendant asserts that it uses its Registered Marks to identify, advertise, and promote its radio-controlled model vehicles, as well as related goods, and that [Plaintiff] is violating trademark rights of [Defendant] by using the mark MAXX ACTION in connection with its offering of role play toys . . . and further that resulting consumer confusion caused by the use of MAXX ACTION will unfairly give the goods of [Plaintiff] a ready acceptance in the marketplace that is undeserved." *Id.* at 3 (internal quotations omitted). Defendant demanded that Plaintiff cease using and abandon the MAXX ACTION trademark. *Id.* at 8. This cease-and-desist letter was also sent to six vendors who sell Plaintiff's products. *Id.* at 9.

Thereafter, Plaintiff filed a Complaint, which was subsequently amended prior to service, which alleges three causes of action. ECF Nos. 1, 8. First, Plaintiff seeks a declaration that its MAXX ACTION trademark does not violate any laws or the rights of Defendant to its Registered Marks. *Id.* at 10. Second, Plaintiff requests a declaration "that, when considering Defendant's Registered Marks, no likelihood of confusion would occur by the continued use of, and the subsequent federal registration of, Plaintiff's MAXX ACTION trademark, which application is pending before the USPTO." *Id.* at 11. Finally, Plaintiff alleged a cause of action for tortious interference with contractual relationships, seeking damages based on Defendant's transmission of the cease-and-desist letter to Plaintiff's vendors. *Id.* at 11–12.

Plaintiff's Amended Complaint includes the following allegation about personal jurisdiction:

> Court has personal jurisdiction over Defendant because Defendant engages in business in the State of South Carolina and has sufficient contacts in the State of South Carolina to subject it to *in personam* jurisdiction. Particularly, Defendant sells its products online and through various dealer stores, and Defendant makes its products available to customers all over the United States, including the State of South Carolina. Further, on information and belief, Defendant sells its products in South Carolina.

ECF No. 8 at 2. In response to Plaintiff's Amended Complaint, Defendant entered a special appearance for the limited purpose of contesting the Court's personal jurisdiction and filed a Motion to Dismiss. The parties have fully briefed Defendant's Motion, and it is ripe for the Court's review.

II. **Legal Standard**

When a defendant challenges the Court's personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of proving that jurisdiction exists by a preponderance

of the evidence. *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). "If the existence of jurisdiction turns on disputed factual questions[,] the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, when "a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *In re Celotex Corp.*, 124 F.3d at 628 (quoting *Combs*, 886 F.2d at 676). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993)). Additionally, "'[i]n reviewing the record before it, a court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306 (D.S.C. 1992) (quoting *VDI Techs. v. Price*, 781 F. Supp. 85, 87 (D.N.H. 1991)).

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. Fed. R. Civ. P. 4(k)(1)(A). Thus, "for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with

4

Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 134 (4th Cir. 1996)).

South Carolina's long-arm statute provides as follows:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803(A). "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (citations omitted). "Consequently, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Id.* (quoting *Stover*, 84 F.3d at 135–36). The central constitutional question the Court must address is whether the defendant has established "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Viewed through this constitutional lens, personal jurisdiction may arise through specific jurisdiction, which is based on the conduct alleged in the lawsuit, or through

5

general jurisdiction. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). Under general jurisdiction, a defendant's contacts or activities in the forum state do not provide the basis for the suit. *Id.* Instead, when a defendant has "continuous and systematic" contacts with the forum state, the defendant "may be sued in [the forum] state for any reason, regardless of where the relevant conduct occurred." *Id.* (citations omitted). When the defendant is a corporation, "general jurisdiction requires affiliations 'so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State,' *i.e.*, comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 159 n.11 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

In contrast, under specific jurisdiction, a defendant may be sued in this Court if the litigation results from alleged injuries that arose out of or related to their contacts with South Carolina and those contacts were sufficient. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). To determine whether specific jurisdiction exists, courts employ a "minimum contacts" analysis that examines: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted). This analysis focuses on the relationship between the defendant, the forum, and the litigation; therefore, the Supreme Court has emphasized "[t]wo related aspects of this necessary relationship." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "First, the relationship must arise out of contacts that the defendant *himself* creates with the

forum State." *Id.* (internal quotation omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  "Second, [the] minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Id.* (internal quotation omitted) (citing *Int'l Shoe Co.*, 326 U.S. at 319).

### III. Analysis

As set forth above, personal jurisdiction may lie where a court has either general or specific jurisdiction over a defendant.  In its Motion to Dismiss, Defendant contends that the Court has neither general nor specific jurisdiction.  The Court turns first to general jurisdiction.

#### A. General Jurisdiction

In recent years, the Supreme Court has significantly narrowed the reaches of general personal jurisdiction.  Most recently, in *Daimler AG v. Bauman*, the Supreme Court clarified that general jurisdiction over corporate defendants will only exist in three circumstances: (1) in the forum where the defendant is incorporated; (2) in the forum where the defendant has its principal place of business; and (3) in a forum where a "corporation's affiliations with the [forum] are so continuous and systematic as to render [it] essentially at home in the forum State."  571 U.S. 117, 138–39 (2014) (internal quotations omitted).

Here, Defendant is a Texas limited partnership that maintains its principal place of business in McKinney, Texas.  As such, the only way this Court can have personal jurisdiction over Defendant is if Defendant's contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina.  *See id.* at 139.

7

Plaintiff has alleged that Defendant sells its toys through three brick and mortar stores in South Carolina as well as online to South Carolina consumers. In its Response to Defendant's Motion, Plaintiff contends that Defendant's website now lists nine hobby shops in South Carolina that distribute Defendant's products. Regardless of the number of brick and mortar stores Defendant distributes its products through or the volume of Defendant's online sales in South Carolina, the Supreme Court has emphasized that sales—even when sizeable—in a forum are not sufficient to confer general jurisdiction, as doing so would subject many corporate defendants to personal jurisdiction in every State. *See id.* Were it otherwise, "any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed." *Goodyear*, 564 U.S. at 929. Measured against the Supreme Court's mandate in *Goodyear* and *Daimler AG*, South Carolina is not a forum in which it would be permissible to subject Defendant to general jurisdiction.[2]

As detailed below, however, this finding is not determinative, as there are sufficient contacts to confer specific jurisdiction over Defendant.

### B. Specific Jurisdiction

Defendant contends the Court lacks specific personal jurisdiction because there is no affiliation between the forum and the underlying controversy. Specifically, Defendant

---

[2] The Court notes that Plaintiff's discussion of general jurisdiction does not address the Supreme Court's holdings in *Goodyear* and *Daimler AG* and largely conflates the issues of general jurisdiction and specific jurisdiction. *See, e.g.,* ECF No. 19 at 4 (contending the Court has general jurisdiction "because [Defendant] has purposefully directed sales and marketing efforts at South Carolina residents through certain independent distributors within the state).

8

argues that "cease-and-desist letters do not form the basis for personal jurisdiction." ECF No. 14-1 at 8 (citations omitted). For the reasons set forth below, the Court disagrees.

Defendant is correct that "the court cannot, consistent with Due Process, find exercise of personal jurisdiction over Defendants permissible based solely on one isolated contact in which Defendants deposited a [mailing] into the U.S. Mails addressed to South Carolina." *Jarrett v. State of North Carolina*, 868 F. Supp. 155, 158 (D.S.C. 1994). That, however, is not the case here. Defendant, a limited partnership engaged in the sale of toys in South Carolina, sent a cease-and-desist letter to Plaintiff as well as a number of retailers that sell Plaintiff's toys. While the Fourth Circuit has not directly addressed the issue at bar, a number of other circuit courts have found specific jurisdiction in similar cases.

For example, in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, Judge (now Justice) Gorsuch, writing for the Tenth Circuit, found personal jurisdiction under similar facts. 514 F.3d 1063 (10th Cir. 2008). In that case, the plaintiffs were eBay sellers who sold a variety of fabrics from their home in Colorado. *Id.* at 1067. Several of the plaintiff's prints contained images imitating a famous artist. *Id.* The defendants, the owners of the rights to the artist's images, saw the plaintiff's eBay page, concluded that the plaintiff's fabrics infringed their copyrights, contacted eBay in California who then suspended the plaintiff's account, and emailed the plaintiffs a cease-and-desist letter, which threatened a federal lawsuit. *Id.* Before the defendants could file suit, the plaintiffs initiated an action in federal district court in Colorado seeking a declaration that their prints did not infringe defendants' copyrights. *Id.* The defendants moved to dismiss for lack of personal jurisdiction, and the district court granted the motion. *Id.* at 1067–68. On appeal, the Tenth Circuit noted

that the defendants went well beyond simply sending the plaintiffs a cease-and-desist letter, emphasizing the defendants' mailing of a notice of infringement to eBay and characterizing the plaintiffs' actions as "an effort to reverse . . . the intended consequences of defendants' [notice] which [plaintiffs] incurred in Colorado." *Id.* at 1082. Therefore, the Tenth Circuit reversed the district court's grant of the defendants' motion to dismiss.

Several other circuit courts have similarly held that extrajudicial enforcement attempts, coupled with a cease-and-desist letter, can form the basis for specific personal jurisdiction. *See, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082 (9th Cir. 2000), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc). While the Federal Circuit has reached varying results on the relevant questions in different cases, the court recently found specific personal jurisdiction in a case where there were "cease-and-desist letters combined with ongoing business in the forum state." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 883 (Fed. Cir. 2008). In doing so, the Federal Circuit favorably cited both *Dudnikov* and *Bancroft & Masters*, embracing the rule that specific jurisdiction is appropriate when "[r]ather than simply sending a cease-and-desist letter to the plaintiffs, the defendants [have] 'communicated their complaint to a third party with the intent that the third party take action directly against plaintiff's business interests . . . .'" *Id.* at 887 (quoting *Dudnikov*, 514 F.3d at 1082).

Based on the Court's review of the cases, there does not appear to be a pure circuit split on this issue as Defendant intimates in its briefing. Rather, these circuit courts have adopted a rule where the district court must conduct a fact-specific inquiry into what

actions other than the sending of a cease-and-desist letter have occurred in a case. *See, e.g., Campbell Pet Co.*, 542 F.3d at 886 (collecting cases where the Federal Circuit has found such additional conduct confers specific personal jurisdiction). This rationale is in accord with guidance from the Supreme Court. In *Burger King Corp. v. Rudzewicz*, the Supreme Court emphasized the importance of "'there be[ing] some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus, invoking the benefits and protections of its laws.'" 471 U.S. 461–62 (quoting *Hanson v. Denckia*, 357 U.S. 235, 253 (1958)). A defendant need not be physically present in a state to meet this jurisdictional requirement. *Id.* at 476. Indeed, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* (citations omitted).

In order to satisfy the purposeful direction requirement, the defendant must have: (1) committed an intentional act; (2) that was expressly aimed at the forum state; and (3) caused harm, the brunt of which is felt by the plaintiff in the forum state. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). "[T]he express aiming test focuses more on a defendant's intentions—where was the focal point of its purposive efforts—while the latter requirement concentrates on the consequences of the defendant's actions—where was the alleged harm actually felt by the plaintiff." *Dudnikov*, 514 F.3d at 1075 (internal quotations omitted).

Applying these well-established jurisdictional principles, the Court holds that Plaintiff has established a *prima facie* case of specific personal jurisdiction. To that end, the Court finds that the three required elements detailed above are met. First, Defendant

committed intentional acts by mailing Plaintiff a cease-and-desist letter and by mailing cease-and-desist letters to six of Plaintiff's retailers. Second, Defendant's intention in doing this was to negatively impact Plaintiff's sales, with Defendant's conduct directed toward Plaintiff in South Carolina. Finally, the brunt of the harm—measured in lost sales—was felt by Plaintiff in South Carolina. Therefore, the Court finds that the extrajudicial enforcement efforts undertaken by Defendant are sufficient to establish specific personal jurisdiction.

Moreover, the Court holds that a finding of personal jurisdiction in South Carolina comports with traditional notions of fair play and substantial justice. "The Supreme Court made clear that [this] factor is to be applied sparingly. When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Campbell Pet Co.*, 542 F.3d at 885 (quoting *Burger King*, 471 U.S. at 477). No such compelling case exists here.

## IV. Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss, ECF No. 14, is **DENIED**.

IT IS SO ORDERED.

                                                    s/Donald C. Coggins, Jr.
                                                    United States District Judge

March 25, 2019
Spartanburg, South Carolina